Probasco *v.* Probasco.

---

Alexander Probasco, Sr.,

*v.*

Alexander Probasco, Jr., and others.

1. On a bill to set aside a transfer of property, alleged to have been obtained by duress, persons in whose favor certain charges on the lands thereby conveyed were made, are necessary parties.

2. A bill which alleges that a feeble old man has, without consideration, transferred to his children all of his property amounting to $45,000, reserving to himself only an annuity of $1,200, inadequately secured, and without any provision whatever for his wife in case she survive him; and that such transfer was obtained from him by want of comprehension on his part, and duress and false representations as to its effect on the part of his children, shows sufficient equity, and will, therefore, be sustained on general demurrer.

---

Bill for relief.   On general demurrer.

*Mr. G. A. Allen,* for the demurrer.

*Mr. R. S. Kuhl, contra.*

The Chancellor.

The complainant, a man of seventy-three years of age, brings this suit against his two sons and his daughter and the husband of the latter, to set aside two instruments made by him, as he alleges, under duress on their part, by which he conveyed to his children all his property (of the value of about $45,000) consisting of houses and lands, bonds and

mortgages, bank stocks, &c., and including even his household furniture, reserving to himself only the use of one of the houses for life and an annuity of $1,200 charged on the real estate. The conveyance of the real estate (of the value of about $10,000) was made subject to the payment of $2,500 to each of two of his grandchildren, in three months after his decease (the provision defeasible, however, in case of their death without issue), and subject also to the payment, within the same time, of $150 to two other persons, $100 to one and $50 to the other. The personal property (of the value of about $35,000) was subjected to no charge whatever. The circumstances as related in the bill, are: That in January, 1878, the complainant—whose wife, the mother of his children, had died—remarried. Immediately after his remarriage, two of the defendants, his son Alexander and his daughter Mary, began to talk to him in regard to his property, alleging, among other things, that his wife would in a few years spend it all, and leave him penniless in his old age. A day or two after his second marriage, his son Alexander came to his house in company with another man (the complainant's wife was temporarily absent), and, in an imperative, harsh and overbearing manner, demanded that he deliver up all his papers, his bonds, notes and other evidences of debt. This he refused to do. Alexander then attempted to take them by force, but was unsuccessful. He and his companion then went to his house, which was near, and soon after returned, and, by threats and actual violence, compelled the complainant's wife, who was then at home, to produce the papers. She delivered them into the complainant's hands, and they were at once taken from him by Alexander, the complainant being unable, from extreme age and feebleness, effectually to resist, and he and his wife being wholly without assistance. Alexander then took the papers, which were all of the complainant's bonds, notes and other securities and evidences of debt, and since that time the complainant has not been able to regain possession of any of them, or to obtain any information in regard to them.

On the day following, Alexander again came to the complainant's house, and requested him to accompany him to his (Alexander's) house, to sign papers relating to a transfer of the property, and not only demanded that he should go, but forbade that his wife should accompany him.   The complainant refused to go unless his wife should be permitted to go with him.   The permission having been granted, he went to Alexander's house, his wife supporting him on one side and Alexander on the other.   When he arrived he found there two lawyers, his daughter and her husband, and another person.   Alexander immediately requested the complainant's wife to leave the room, and, on her refusal, forcibly ejected and excluded her.   There were then read over to him two instruments of writing, which had been previously prepared, and he was requested to sign them. On his hesitating to do so, because he did not fully understand them, although they had been read to him, he was told that his wife was a spendthrift, and that unless he signed those instruments she would spend all his property and leave him without means of support; and he was then told that if he signed them the property would still remain entirely his own, and the only effect of the instruments would be to prevent his wife from spending his estate.

The bill further states that, under misapprehension as to their legal effect, and induced by the statements and promises made to him by his son Alexander and his son-in-law and the other persons present, and the apprehensions which had been excited in him there, he signed the instruments; and that he was then too feeble to write his name, and was therefore directed to sign with his mark, which he did accordingly.   It further states that he was induced to give up his papers and to sign those instruments through the duress to which he was then subjected, and that he was deceived and misled as to the purport and real character and effect of the instruments, not only as to his right to retain the control and management of his property, but as to their effect upon the rights of his wife in his property

5

after his decease, he having been distinctly told that his property would be distributed after his death in the same manner as if those instruments had not been signed, and that their effect would be to prevent his wife from spending his estate during his life.

From the statements of the bill, it appears that a very large part of his notes, bonds, stocks, &c. thus obtained from him, has been converted into cash and divided among his children, and the proceeds either spent by them in paying their debts or invested for their own benefit; that they have had, ever since the instruments were executed, the control of all his real estate except the village house and lot in which he lives; that they have refused to pay him the money charged upon the property for his benefit by the instrument by which the real estate was transferred to them, and that he has not only been unable to obtain the necessaries of life (his requests for money having been answered by harsh refusals), but he has been compelled to apply to the overseer of the poor, as a pauper, for the means of support. The bill prays that the instruments may be set aside, and that the property taken from him, under them, may be restored to him or duly accounted for.

The grounds of demurrer are, want of equity and nonjoinder of necessary parties. On the statements of the bill (which, on demurrer, are taken to be true), there can be no doubt as to the complainant's equity. He appears to have been a very feeble old man, and to have executed, at the instance of his children, and without any consideration whatever, a conveyance of all his property to them (one of them resided, and still does, in the distant state of California), reserving to himself only a charge of $1,200 a year on the real estate (which is of the value of about $10,000 only, and part of which he must necessarily occupy), with no security for the payment except such as is afforded by the real estate itself, and leaving his wife, whom he had just married, without any provision whatever in case she should survive him. He alleges duress of threats and of

force, and not only want of comprehension, on his part, of the contents of the instruments, but false representations as to their effect by those who were to be benefited by them.

The grandchildren and the two other persons in whose favor charges are made in the deed for the real estate, are necessary parties to this suit. The demurrer will, therefore, be sustained, on the ground of non-joinder, but the complainant will be permitted to amend by adding the necessary parties, on payment of the costs of the demurrer.